UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RAYMOND A. HABERSAT,

                Petitioner,

v.

WILLIAM POLLARD,

                Respondent.

Case No. 12-CV-1101-JPS

ORDER

---

Petitioner Raymond A. Habersat ("Habersat") brought to this court a petition for writ of habeas corpus, asserting that his constitutional rights were violated during his criminal trial in the Milwaukee County Circuit Court. (Docket #1). Habersat articulates two violations: first, that he had ineffective assistance from trial counsel; and second, the admission of other acts evidence. (Docket #1). In the previous Rule 4 Order, this court concluded that Habersat's claim regarding other acts evidence could not proceed. (Docket #3). The ineffective assistance of trial counsel claim is now fully briefed and ready for resolution. As explained below, the court concludes that Habersat shows no constitutional violation and, therefore, Habersat's petition for writ of habeas corpus will be denied.

1.     Background[1]

Habersat was charged with first-degree sexual assault of a child, in violation of Wis. Stat. § 948.02(1) (2005-06). The complaint alleged that Habersat put his mouth on the penis of his five-year-old neighbor, Cody P.

---

[1] Facts in this Background section are relayed in the Wisconsin Court of Appeals Decision, *State v. Habersat*, 2009AP976-CR (Wis. Ct. App. July 7, 2010), unless otherwise attributed.

The case proceeded to jury trial, at which Habersat's theory was that Cody's mother, Tracey Botterud ("Botterud"), had coerced Cody into fabricating the assault to retaliate against Habersat after an unspecified falling out.

Botterud testified that Cody, using a stuffed animal as a reference, told her and her fiancé that Habersat put his mouth on Cody's penis. Cody told them this on the evening of August 5, 2005. Botterud and her fiancé called the manager of their condominium association, Brian Molnar ("Molnar"), that day, told Molnar what had happened, and asked if the association could remove Habersat from the building. Botterud contacted the police two-and-a-half weeks later, on August 23, 2005.

On questioning from defense counsel, Botterud denied that she allowed Cody to spend time with Habersat after Cody disclosed the abuse. Specifically, she testified that she and Cody did not go out to celebrate the birthday of Habersat's fiancée, Kelleen Grucza ("Grucza"), on the night of August 5, 2005, and that Cody did not go to the fair with Habersat on August 6, 2005. (Tr. 12/5/06, afternoon, at 41, 46). Botterud acknowledged that she gave Grucza a card for her birthday, but testified that she gave it to Grucza before Cody disclosed the abuse.

Cody testified briefly, answering questions from both the prosecution and defense. The questions from counsel were about whether he knew his colors, the difference between the truth and a lie, his teacher's name, and his birth date. Neither side asked Cody any questions about the assault. The state showed the jury a videotape of Cody being interviewed by a psychotherapist from the Child and Adolescent Psychiatry and Behavioral Health Clinic of Children's Hospital of Wisconsin. In the videotape, Cody

states that while he was lying on the hood of Habersat's truck, Habersat pulled down Cody's pants and put his mouth on Cody's penis.

The defense called Grucza as a witness. Grucza testified that Cody spent all day on August 5, 2005, running errands with her, Habersat, and several relatives. She also testified that Botterud, Cody, and Botterud's two-year-old daughter joined Habersat, Grucza, and their family to celebrate her birthday at about 5:30 that evening, and then returned to Grucza's home for cake at about 10:00 that night. The court admitted into evidence a credit card statement showing a charge of $68.45 at a restaurant on August 5, 2005. Grucza also testified that Cody spent the following day, August 6, 2005, at the Wisconsin State Fair with her and her family, including Habersat. Grucza did not have any evidence to verify that they were at the fair.

The defense also called Molnar to testify. Molnar said Botterud called him the second or third week in August and asked if he was aware that a sex offender lived on the property, identifying Habersat as the sex offender. Molnar testified that he told Botterud he was not aware, and advised her to call the police if she was having a problem with Habersat. Molnar denied that Botterud told him that Habersat had sexually assaulted Cody.

The defense also introduced a videotape of a police interview with Cody. The interview had been taken after Botterud reported the assault to the police, but before Cody's interview with the psychotherapist. (Tr. 12/6/06, morning, at 25-27). In its closing argument, the defense pointed out discrepancies between the police and psychotherapist interviews, including the fact that Cody did not answer certain questions in the earlier interview that he answered in the second interview.

The jury found Habersat guilty as charged. The trial court sentenced Habersat to thirty years of initial confinement and fifteen years of extended supervision. Habersat secured new counsel and filed a post-conviction motion seeking a new trial on the grounds that trial counsel provided ineffective assistance in the following five ways: (1) by not moving for a mistrial after Cody's cross-examination; (2) by not objecting to Botterud's testimony; (3) by opening the door to an incriminating statement during a police detective's testimony; (4) by the totality of errors undermining the confidence in the outcome of the trial; and (5) in not presenting photos of Cody and Habersat at the County Fair on August 6, 2005. The trial court denied the first four arguments, and ordered a hearing on the fifth, pursuant to *State v. Machner*, 92 Wis.2d 797 (1979).[2]

In an order denying Habersat's post-conviction motion, the trial court found several facts and arrived at several legal conclusions. The portions relevant to Habersat's Petition in this court are as follows:

> The defendant claims he was denied effective assistance of counsel since trial counsel did not attempt to introduce at trial photographs that purportedly showed that the child victim (Cody) of the sexual assault was allowed by the mother to attend the State Fair with the defendant after the date the mother said she discovered the sexual assault. The theory is that the photographs would have bolstered the credibility of Kelleen Grucza and provided further evidence that the mother was fabricating the sexual assault.

---

[2] In *Machner*, the Court of Appeals of Wisconsin held that "where a counsel's conduct at trial is questioned, it is the duty and responsibility of subsequent counsel to go beyond mere notification and to require counsel's presence at the hearing in which his conduct is challenged. We hold that it is a prerequisite to a claim of ineffective representation on appeal to preserve the testimony of trial counsel." 92 Wis.2d at 805.

[Trial counsel's] testimony was more credible than that of the other witnesses and the Court finds the facts to be as he testified. [Trial Counsel] testified that he was told by either the defendant or [Grucza] that there may possibly be photos of the child attending the State Fair with the defendant after the date the mother stated she discovered the sexual assault. [Trial counsel] talked with the defendant over the months the case was pending and asked for the photos. Although [trial counsel] repeatedly asked the defendant and [Grucza] for the photos, for a long time they weren't even sure the photos existed. [Trial counsel] asked that he be provided with the photos if they were found. After the trial commenced, in the hallway outside the courtroom [Grucza] provided [trial counsel] with a disc that she said contained the photos. This occurred after [Grucza] testified in the defendant's case in chief to impeach the child's mother. She did not provide photos, but a disc.

[Trial counsel] tried to view the disc, but did not have equipment to view the contents of the disc to discover what was in fact on the disc. Neither did he take the time during trial to stop trial preparation or any other evening activity and search out equipment capable of viewing the disc and developing any photos. He testified that when he saw the photos at the post conviction hearing, he did recognize the victim Cody in the photos and would have tried to introduce them at trial had they been available. He further testified that in hindsight, he could have tried taking the disc to Kinkos to review the contents and possibly get the photos printed for use at trial. [Trial counsel] acknowledged that such late disclosure of the photos would have been contrary to the pretrial disclosure orders.

. . .

[Trial counsel's] representation of the defendant was not deficient and he was not ineffective for failing to introduce into evidence photos that he did not have when the trial commenced and which he was not provided prior to the end of the trial. Neither was he ineffective for failing to search

Page 5 of 16

Case 2:11-cv-01101-JPS   Filed 04/03/13   Page 5 of 16   Document 19

around prior to the last day of trial for any device capable of viewing the disc and then printing photos.

. . .

The photos themselves do not give any obvious indication that they were taken during the State Fair of a particular year. None of the photos show the defendant with the child Cody.

. . .

[Grucza] did testify that the child's mother was in error on the date of the sexual assault discovery. [Grucza] testified about being at the State Fair with the defendant and the child Cody after the date provided by the child's mother. The photographs do not independently prove her assertions. At best the photographs would be cumulative to her testimony and possibly even irrelevant. The jury did get to hear and consider her testimony.

Even if the photographs were admitted and even if they independently verified [Grucza]'s testimony, it would only prove that the child's mother had the wrong date she discovered the sexual assault. The jury was aware of such discrepancy from the testimony. The jury could choose to believe that the mother had the wrong date or that she made up the events. However, she was not the central portion of the case against the defendant. If the mother were wrong on the date she discovered the sexual assault it does not follow that the sexual assault itself was fabricated. The jury had sufficient evidence to consider apart from her testimony.

The convicting evidence was the child's video with the child's demeanor, actions, and words. Even if the mother were mistaken about the date, there was no question that the child was sexually assaulted and by the defendant.

…

Although the court finds that trial counsel was not ineffective for not attempting to present the photographs at trial, the court further finds that even if he were ineffective on

that matter, there is no reasonable probability that the result of the trial would have been different.

(Docket #9-4 at 2-4). The trial court thus rejected Habersat's argument and denied his motion.

Habersat filed a direct appeal arguing that the trial court erroneously admitted other acts evidence, and that he is entitled to a new trial due to ineffective assistance of trial counsel. The Court of Appeals affirmed the trial court. *State v. Habersat*, 2009AP976-CR (Wis. Ct. App. July 7, 2010). Habersat filed a petition for review with the Supreme Court of the State of Wisconsin; the Supreme Court declined to hear Habersat's petition. (Dockets #9-9, #9-10).

Habersat then brought his Petition in federal court. (Docket #1). Focusing on the claims that survived Rule 4 screening, Habersat alleges that his trial counsel was ineffective on three grounds: (1) counsel failed to show the jury the photographs from the fair as part of his defense; (2) counsel failed to move for a mistrial after Habersat's confrontation clause rights were violated;[3] and (3) counsel failed to object to Botterud's testimony that Habersat took Cody without permission on August 5, 2005.[4] (Petition at 7-8, Brief in Support (Docket #13) at 6-16).

---

[3] Habersat articulates this claim as "Failure of counsel to move for a mistrial when Cody P. was unavailable for any meaningful cross-examination in violation of federal and state confrontation clause. No full and exacting cross-examination was made. A taped statement was allowed with no meaningful cross-examination." (Petition at 7-8).

[4] In his Brief in Support, Habersat raises, for the first time, a fourth claim for relief. In this fourth claim, Habersat argues that trial counsel was ineffective because he opened the door to damaging testimony in his cross-examination of Detective Timothy Duffy. (Brief in Support at 16). As the State argues, this claim is time-barred; Habersat did not raise the claim until April 13, 2012. (Brief in Opposition at 28). Accordingly, the court now considers the three claims Habersat presented in his petition that survived the court's Rule 4 screening.

2. Standard of Review

The standard governing constitutional claims of ineffective assistance of counsel is well-established: to prevail on such a claim, the petitioner must show both that counsel's performance was deficient, and that the petitioner suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the context of a petition for habeas corpus, where the state court has already considered the petitioner's claims of ineffective assistance of counsel under a standard clearly established by federal law, "its decision must be respected unless 'unreasonable.'" *Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997) (*quoting* 28 U.S.C. § 2254(d)(1)). As the Seventh Circuit explained, "*Strickland* builds in an element of deference to counsel's choices in conducting the litigation; § 2254(d)(1) adds a layer of respect for a state court's application of the legal standard." *Id.*

3. Analysis

    3.1 Trial Counsel's Failure to Present the Photographs

The Wisconsin Court of Appeals recited the proper *Strickland* standard in its analysis. *Habersat*, 2009AP976-CR at ¶¶ 18-20. For his first claim, Habersat argued that counsel was ineffective in failing to present photographs of Cody; the Court of Appeals applied the *Strickland* standard to this claim as follows:

> First, we agree with the trial court that trial counsel's performance was not deficient. Trial counsel was first given a CD containing photographs on the morning of the final day of trial, even though Habersat and Grucza had the CD in their possession for at least a year prior to trial. Trial counsel had never seen the photographs and, after receiving them on the last day of the trial, he questioned whether the trial court would even admit them. Although at the *Machner* hearing trial counsel indicated that in hindsight, he believes he "probably

> should have…somehow look[ed] to see what was on the disk" and then sought to admit the photographs, *Strickland* advises "that every effort be made to eliminate the distorting effects of hindsight." *See id.*, 466 U.S. at 689. It was not deficient performance to decline to drop everything on the last day of trial to find a computer to view the photographs and work them into the case.
>
> Second, we agree with the trial court's analysis concerning prejudice. We are unconvinced that even if the photographs had been admitted, "the result of the proceeding would have been different." *See id.* at 694.

*Habersat*, 2009AP976-CR at ¶¶ 28-29 (paragraph numbers omitted).

In his Brief in Support of his Petition before this court, Habersat puts forth two arguments on this point. First, he disputes the trial court's finding that his trial counsel first received the photographs on the last day of trial. (Brief in Support at 11). While "a determination of a factual issue made by a State court shall be presumed to be correct," a habeas petitioner may rebut a state court's finding by offering "clear and convincing evidence" of error. 28 U.S.C. § 2254(e)(1). In this instance, however, the court need not evaluate whether Habersat has met the clear and convincing evidence standard because Habersat's second argument, regarding whether or not trial counsel's failure to offer the photographs constitutes ineffective assistance, is dispositive of the entire inquiry. That is, regardless of whether trial counsel had possession of the photographs prior to trial, the court concludes that Habersat cannot prevail on his ineffective assistance argument. First, the standard of review for ineffective assistance of trial counsel claims in a habeas petition requires this court to defer to the State courts' analysis unless it is an "unreasonable" application of *Strickland. Holman*, 126 F.3d at 881; 28 U.S.C. § 2254(d)(1). Here, the trial court concluded that admission of

the photographs would not have changed the trial result. The trial court's strongest point in support is the recognition that even if the jury accepted Grucza's testimony, the jury could still conclude that Botterud had the date of Cody's disclosure wrong. Belief of Grucza's testimony does not mandate acquittal in this case, and it does not negate the other evidence on the record supporting the jury's verdict. Additionally, the trial court noted that the photographs did not actually verify Habersat's claim that they proved he and Cody went to the Fair together, as there are no pictures of the two of them. Further, the court noted that the pictures did not independently verify the dates on which the pictures were taken. Thus, the jury would only know the photographs' relevance if it accepted Grucza's testimony explaining this outing, which was before the jury for its consideration. The Court of Appeals agreed with the trial court that trial counsel's performance was not deficient, and that Habersat had not shown prejudice. *Habersat*, 2009AP976-CR at ¶¶ 28-29.

This court cannot conclude that the state courts were "unreasonable" in these findings and conclusions. First, because the photographs were undated and did not actually show Habersat and Cody together, their relevance is undoubtedly diminished. Second, the state courts were reasonable in recognizing that the photographs, even if they were taken at the Fair on August 6, 2005, do not independently demand Habersat's acquittal of the charges of sexual assault. Nothing in the record or in briefing suggests that the assault was either disclosed on August 5, 2005, or never. It was not unreasonable for the state courts to conclude that the omission of the photographs from evidence did not prejudice Habersat, because even if the jury had seen them, it could have found that Botterud simply got the date

Page 10 of 16

Case 2:11-cv-01101-JPS   Filed 04/03/13   Page 10 of 16   Document 19

wrong. Having so concluded, the court will not issue a writ of habeas corpus on this point.

### 3.2 Trial Counsel's Failure to Move for a Mistrial

Habersat next argues that trial counsel was ineffective when he did not move for a mistrial after Cody was unavailable for meaningful cross-examination. The Wisconsin Court of Appeals, again proceeding under *Strickland*, concluded that trial counsel was not deficient in failing to move for a mistrial because Habersat was not entitled to a mistrial by law. *Habersat*, 2009AP976-CR at ¶ 31. The Court of Appeals rejected Habersat's contention that Cody "could not and did not answer questions," noting that "Cody was able to answer some questions, either verbally or by nodding or shaking his head." *Id.* at ¶ 33. The Court explained:

> This is not a situation where Cody refused to answer questions on cross-examination or was completely unable to do so. Rather, trial counsel elicited some answers and then, without explanation, ended his cross-examination. Perhaps he believed he had successfully shown that Cody was not a reliable witness, or perhaps he was concerned about appearing to badger a sympathetic witness. For whatever reason, trial counsel did not ask Cody questions about what occurred in Habersat's garage or about his taped interview. Trial counsel made the decision to cease questioning.

*Id.* (footnote omitted). The Court concluded that trial counsel was not deficient for failing to move for a mistrial because Habersat was not entitled to a mistrial. *Id.*

In his Petition before this court, Habersat argues that the cross-examination violated *Crawford v. Washington*, 541 U.S. 36 (2005), and that his trial counsel was ineffective for not moving for a mistrial. (Brief in Support at 13). The State responds that there was no *Crawford* violation, and therefore

the failure to move for a mistrial was not ineffective assistance of counsel. (Brief in Opposition (Docket #18) at 21). The State further argues that *Strickland*, as interpreted by the Seventh Circuit, "adds an extra layer of deference to" the *Crawford* analysis. (Brief in Opposition at 22) (*quoting Ebert v. Goetz*, 610 F.3d 404, 412 (7th Cir. 2010)).

In *Crawford*, the United States Supreme Court held that the admission of testimonial, out-of-court statements is barred under the Confrontation Clause of the Sixth Amendment to the Constitution of the United States,[5] unless the declarant is unavailable, and then only if the defendant had an opportunity for cross-examination. 541 U.S. at 59. In that case, prosecutors in the State of Washington sought admission of a recorded statement from the defendant's wife, which statement she made as part of the police investigation. *Id.* at 38. The defendant's wife did not testify at trial by operation of Washington State's marital privilege. *Id.* at 40. The Court held that admission of her earlier statements violated the Confrontation Clause because the defendant did not have an "opportunity to cross-examine" her at trial. *Id.* at 59.

In this case, the parties do not dispute that Habersat had an "opportunity to cross-examine" Cody in front of the jury. However, Habersat's argument is slightly different; he argues that Cody was unavailable for what he calls "meaningful" cross-examination, and that trial counsel was deficient in not moving for a mistrial. (Brief in Support at 13). In considering this claim, the Court of Appeals correctly articulated the established standard for ineffective trial counsel, namely, that counsel's

---

[5]The Confrontation Clause states that, "[i]n all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him."

Page 12 of 16

Case 2:11-cv-01101-JPS   Filed 04/03/13   Page 12 of 16   Document 19

performance must be deficient and that the defendant must be prejudiced by this deficient performance. *Habersat*, 2009AP976-CR at ¶ 18. The Court of Appeals concluded that counsel's failure to move for a mistrial was not deficient because such a motion would have been denied. *Id.* at ¶ 33.

On this point, the court concludes that the state court's decision must stand because it is not an "unreasonable" application of established federal law. *Holman*, 126 F.3d at 881; 28 U.S.C. § 2254(d)(1). First, as the Court of Appeals observed, moving for mistrial in this instance would have been met with denial of the motion; Cody was available for cross-examination, and counsel from both sides successfully asked, and received answers to, several questions. *Habersat*, 2009AP976-CR at ¶ 33. The court's conclusion that trial counsel was not ineffective is a reasonable application of federal law. Counsel is ineffective only when his performance was deficient and the defendant was prejudiced by that deficiency. Here, Habersat cannot meet either prong of this test; there is no deficiency because counsel is not ineffective for failing to bring an ill-fated motion, and the absence of the motion yields no prejudice because, even if brought, the motion would have been denied. The state court thus reasonably applied *Strickland* in denying Habersat's claim for relief, and a writ of habeas corpus will not issue on this point.

3.3 Trial Counsel's Failure to Object to Botterud's Testimony

In his final ground for relief, Habersat argues that trial counsel was ineffective in failing to object to Botterud's testimony that Habersat took Cody on August 5, 2005, without her permission. (Brief in Support at 15). Habersat argues that the testimony was irrelevant and highly prejudicial, and that trial counsel's failure to object constitutes deficient performance. The Court of Appeals denied relief on this claim, explaining:

> We conclude that Habersat has failed to establish that he was prejudiced by his trial counsel's alleged deficiency and, therefore, we do not address whether trial counsel's performance was deficient. *See Strickland*, 466 U.S. at 697. Specifically, we conclude that [Botterud]'s reference to Habersat taking Cody to a park without [her] permission—where her testimony was also that Cody frequently spent time with Habersat, a friend of the family—was not so prejudicial that if trial counsel had objected and the testimony had been excluded, "the result of the proceeding would have been different." *See id.* at 694. In this case, the jury had the opportunity to view over an hour of interviews conducted with Cody concerning the assault. The jury also heard testimony from [Botterud] describing how Cody first disclosed the assault. We are unconvinced that [Botterud]'s brief testimony that Habersat failed to ask to take Cody to the park, especially where there is no allegation that any abuse occurred at that time, would have impacted the jury's ultimate findings such that the testimony undermined confidence in the trial's outcome. *See id.*

*Habersat*, 2009AP976-CR at ¶ 37.

In his Petition before this court, Habersat re-asserts the argument that this testimony was irrelevant and prejudicial, arguing that his counsel's failure to object was ineffective assistance of counsel. (Brief in Support at 15). In response, the State argues that Habersat has not shown that the Court of Appeals' decision is an unreasonable application of federal law. (Brief in Opposition at 25).

The Court of Appeals correctly articulated the established standard for ineffective assistance of counsel, and then analyzed the trial record to determine whether Habersat was prejudiced by the admission of Botterud's testimony. *Habersat*, 2009AP976-CR at ¶¶ 18, 20, 37. To show prejudice under *Strickland*, a defendant must show that "counsel's errors were so serious as

Page 14 of 16

Case 2:11-cv-01101-JPS   Filed 04/03/13   Page 14 of 16   Document 19

to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687. The Court of Appeals concluded that Botterud's brief testimony that Habersat took Cody to the park once without asking did not undermine confidence in the trial's outcome, especially given the strong evidence of the assault. *Habersat*, 2009AP976-CR at ¶ 37. On review, this court concludes that the state court's assessment was a reasonable application of federal law. Given the quantity of evidence proving the assault, it is difficult to see how Botterud's brief testimony on this point could call the reliability of the guilty verdict into question. Further, without satisfying the prejudice prong of the *Strickland* test, Habersat cannot prevail on his assertions that he was deprived of effective counsel. The Court of Appeals correctly articulated the standard, and its application of the standard to Habersat's claim was reasonable. A writ of habeas corpus will not issue on this point.

4. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), the applicant must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). While Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue, additional argument is not necessary here. Given the record before the court, no reasonable jurist would find it

debatable whether this court was correct in its ruling on the present matter. As a consequence, the court must deny a certificate of appealability as to Habersat's petition.

Accordingly,

IT IS ORDERED that Habersat's "Petition for Writ of Habeas Corpus" (Docket #1) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that a certificate of appealability as to Habersat's petition be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that this case be and the same is hereby DISMISSED.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 3rd day of April, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge